## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 23-000150-M |
| | ) |
| TAYLOR TARANTO | ) |
| | ) |
| **Defendant** | ) |
| | ) |

### MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Mr. Taylor Taranto, through counsel, respectfully requests that this Court release him, pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). The government seeks preventative detention under 18 U.S.C. 3142 (f)(2)(A). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Taranto] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Taranto's appearance at court. It is the government's burden to show by a preponderance of the evidence that Mr. Taranto is a serious risk of flight and requires detention pretrial, regardless of whatever conditions are available to the Court. The government cannot meet that burden here. Mr. Taranto has zero criminal history, a stable home in Washington state, a loving wife and family, and is connected to mental health services there. Furthermore, Mr. Taranto is currently charged with four misdemeanors relating to events at the Capitol that occurred over two and a half years ago, for which an arrest warrant was only issued the day of his arrest on June 29, 2023.

Because there are a combination of conditions that will reasonably ensure his appearance and ensure the safety of the community. Mr. Taranto should be released to the custody of his wife with continuing mental health treatment, as detailed below.

**I.     Background**

Mr. Taranto is charged by a Complaint and associated warrant issued on June 29, 2023 with four misdemeanor offenses relating to his alleged participation in the events on January 6, 2021 at the Capitol: 1) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority pursuant to 18 U.S.C. § 1752(a)(1); 2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds pursuant to 18 U.S.C. § 1752(a)(2); 3) Disorderly Conduct on Capitol Grounds pursuant to 40 U.S.C. § 5104(e)(2)(D); and 4) Parading, Demonstrating, or Picketing in a Capitol Building pursuant to 40 U.S.c. § 5104(e)(2)(G).

**II.    Legal Standard**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B).  The Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755; *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose.").  "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).  As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  "It is only a 'limited group of offenders' who should be [detained] pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189).  Any "[d]oubts regarding the propriety of release should be resolved

in favor of the defendant." *Motamedi*, 767 F.2d at 1405. The potential penalties for this offense also favor release. *See United States v. Vazquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (finding factor in favor of release because exposure to a sentence to 12-months is a "relatively low penalty").

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). The four factors a court must consider to determine whether an individual is a flight risk are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). A determination that an individual is a flight risk must be supported by a preponderance of the evidence.'" *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam).

### III. The Government Has Not Met Its Burden to Demonstrate that Mr. Taranto is a "Serious Risk of Flight."

First, it is important to note that preventative detention is not available to the court under the dangerousness finding, but only as a serious risk of flight. The plain language of the statute only permits detention at the Initial Appearance when the defendant poses a "*serious* risk" of flight, § 3142(f)(2)(A) (emphasis added). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something

3

more. According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (noting interpretation of statute should be reluctant to treat statutory terms as surplusage).

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances.[1] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See Abrahams*, 575 F.2d at 4. The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and Counsel believes no such showing has been made here.

In addition, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.[2] As stated below, the Government has not met its burden of proving that the risk of non-appearance in this case cannot be mitigated by certain stringent conditions of release.

---

[2] *See, e.g.,* Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017). This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), or a "low-cost non-appearance" (who unintentionally fails to appear), can be addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services. *See* Gouldyn, 85 U. Chi. L. Rev. at 724.

### IV. In This Case, the Government Has Not Met Its Burden of Proving That Mr. Taranto Poses a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

Mr. Taranto should be released on conditions because there is not a "serious risk that the [defendant] will flee" the jurisdiction under § 3142(f)(2)(A). Mr. Taranto owns a home together in Washington with his wife of around 15 years. His mother, father, siblings, and many other members of his extended family reside in Washington state. Mr. Taranto has zero criminal history, a history of honorable service in the U.S. Navy, and a supportive family network back in Washington state. An appropriate release plan would mitigate any concerns regarding flight risk. Furthermore, the § 3142(g) factors in this case mitigate in favor of release, as detailed below.

#### A. *The Nature and Circumstances of the Offense*

To begin, the offense for which Mr. Taranto was charged is not detention eligible, reflecting Congress' determination that such offenses should normally result in pretrial release. The Government has primarily mentioned perceived erratic behavior leading up to his arrest as the basis for requesting detention; however the fact remains the same: Mr. Taranto stands charged with four misdemeanor offenses and no prior criminal history. While the Government makes reference to Mr. Taranto being sought after, the complaint and arrest warrant in this case were not issued until June 29, 2023, the same day Mr. Taranto was arrested (and upon information and belief, while he was already in custody).

#### B. *The Weight of the Evidence*

The weight of the evidence is the least important factor for the Court to consider but there is nothing about the evidence that lends support to the assertion that Mr. Taranto is a serious risk of flight. Mr. Taranto has been available and in plain sight for the last two and a half years. The Government admits that they had been surveilling Mr. Taranto since well before June 29, 2023, and were aware that he was attending nightly protests at the DC Jail, and that he had attended the

5

sentencing of Mr. Walls-Kaufman in mid-June. They were also aware that he was a Defendant in a civil suit and appearing in that capacity since 2021. Furthermore, Mr. Taranto has otherwise resided in the same house in Washington with his wife since 2010. While the Government contends that Mr. Taranto has essentially been absconding from them, their own Detention memo reveals the opposite is true.

  C. *The History and Characteristics of Mr. Taranto*

Mr. Taranto's history and characteristics demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. Mr. Taranto has lived Washington State for much of his adult life, save when he was in the U.S. Navy, where he was deployed to Iraq and served honorably for over six years before his honorable discharge. His mother, father, siblings, and numerous other relatives all reside in the Washington area. Since his initial appearance, counsel has had the opportunity to speak with a number of individuals who know Mr. Taranto well, including his mother and wife. Mr. Taranto is a loving and engaged father who has actively worked to address mental health issues that began after trauma experienced during his military service. He is connected with a mental health therapist and psychiatrist, with whom he has been working for over a decade. He receives active assistance from the VA, and also SSDI benefits as a result of his service-related disability. His wife has journeyed across the country at a moment's notice to accompany Mr. Taranto back home to Washington.

  D. *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Taranto's Release*

The dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently

6

pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Taranto poses an unmitigable threat to public safety. He is charged with an offense that does not permit preventative detention and the proposed conditions address any hypothetical concerns.

**V.    Detaining Mr. Taranto as a Serious Risk of Flight Is Not Only Legally Unsupported, But Is Also Harmful and Unnecessary.**

    *A.    Detention can have disastrous consequences on an individual's life, and particularly on an individual like Mr. Taranto suffering from mental illness.*

Congress was correct to cabin pretrial detention to "extreme and unusual circumstances," because even very short periods of detention have been shown to seriously harm defendants. In addition to the trauma and danger inherent in a jail stay,[3] jails' physical and mental health screenings and treatment offerings are often woefully inadequate.[4] Such harms are exacerbated for individuals like Mr. Taranto has experienced prior trauma. *See* Exhibit A, Articles documenting harms for mentally ill individuals in prison.

Research shows that incarceration is far more dangerous and harmful to individuals suffering from documented mental health issues like Mr. Taranto.[5] As summarized by Mental Health America, "[o]ver the past 50 years [America has] gone from institutionalizing people with mental illnesses, often in subhuman conditions, [in state mental health hospitals] to  incarcerating

---

[3] See Allen J. Beck, et al., *Sexual Victimization in Prisons and Jails Reported by Inmates, 2008–09*, Bureau of Justice Statistics (2010), 22–23, archived at https://perma.cc/H33S-QFPK; Margaret Noonan, et al., *Mortality in Local Jails and State Prisons, 2000–14—Statistical Tables*, Bureau of Justice Statistics 8 (2016), archived at https://perma.cc/B9CN-ST3K.

[4] *See* Laura M. Maruschak, et al., *Medical Problems of State and Federal Prisoners and Jail Inmates*, Bureau of Justice Statistics 9, 10 (2015), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in prisons and jails); *see also* Faye S. Taxman, et al., *Drug Treatment Services for Adult Offenders: The State of the State*, 32 Journal of Substance Abuse Treatment 239, 247–49 (2007), archived at https://perma.cc/G55Z-4KQH.

[5] See Quant, Karen, "Research Roundup: Incarceration Can Cause Lasting Damage to Mental Health," Prison Policy Institute, May 13, 2021 (available at https://www.prisonpolicy.org/blog/2021/05/13/mentalhealthimpacts/).

them at unprecedented and appalling rates—putting recovery out of reach for millions of Americans."[6] In Mr. Taranto's case, he is in need of support which is simply unavailable at the D.C. Jail.  Given his history, or lack thereof, for Mr. Taranto, his detention is punitive.

> B. Many Conditions of Release Have Been Proven to Effectively Manage Ordinary Risk of Flight or Nonappearance.

Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating to 3,700 fewer arrest warrants per year.[7] Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems.[8] Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court and assisting clients in finding stable housing, employment or education.[9] Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight.[10]

---

[6] See Position Statement: Mental Health Treatment in Correctional Facilities, Mental Health America (available at https://www.mhanational.org/issues/position-statement-56-mental-health-treatment-correctional-facilities).

[7] *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW.

[8] *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

[9] *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2007), archived at https://perma.cc/5C8C-7HJK.

[10] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368– 74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight,

**VI.  Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Taranto Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[11] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[12] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[13] The below chart reflects this data:

---

and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight").

[11] Ex. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[12] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* Ex. 2.

[13] *See* Exs. 1 and 2.



Despite the statistically low risk of recidivism that defendants like Mr. Taranto pose, the government recommends detention in 71% of cases.[14] Mr. Taranto should be released to treatment because the government has not presented evidence that shows that he would be among the approximately 2% of defendants who commit another crime while on pretrial release.

## VII. Mr. Taranto Should Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.

Mr. Taranto should be released because there are conditions that will reasonably assure the safety of the community and Mr. Taranto's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden and Mr. Taranto should not be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the

---

[14] *See* Ex. 3, AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

Court deems necessary, will reasonably assure Mr. Taranto's appearance in court and the safety of the community:[15]

- Return to Washington state with his wife;

- Ongoing engagement with mental health service providers;

- Reporting on a "regular basis" to Pretrial Services Agency or some other agency, *id*. § 3142(c)(1)(B)(vi);

## VIII. Conclusion

For the foregoing reasons, Mr. Taranto respectfully requests that this Court release him as noted above with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Kathryn D'Adamo Guevara
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

---

[15] Counsel may supplement this motion with additional information prior to the next hearing.